UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAREN PATILLO,

              Plaintiff,                           Civil Action No. 2:11 cv 13415

        v.                                  District Judge Avern Cohn
                                            Magistrate Judge Laurie J. Michelson

PATRICK R. DONAHOE, Postmaster
General,

              Defendant.

_____/

**REPORT AND RECOMMENDATION TO GRANT
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Karen Patillo ("Patillo" or "Plaintiff") alleges in her Complaint that she was wrongfully terminated from her position due to her race in violation of Title VII, her age in violation of the Age Discrimination in Employment Act (ADEA), and in retaliation for her previous Equal Employment Opportunity ("EEO") activity in violation of Title VII. Postmaster General Patrick R. Donahoe ("Defendant") filed a Motion for Summary Judgment (Dkt. 18), which has been referred to this Court for a Report and Recommendation (Dkt. 23). Upon review of the Complaint (Dkt. 1), Defendant's Motion for Summary Judgment (Dkt. 18), Plaintiff's Response (Dkt. 20-21), and Defendant's Reply (Dkt. 24), this Court concludes that oral argument will not significantly aid in the resolution of the motion. *See* E.D. Mich. LR 7.1(f)(2).

For the following reasons, the Court RECOMMENDS that Defendant's Motion for Summary Judgment (Dkt. 18) be GRANTED in its entirety and that Plaintiff's Complaint be DISMISSED WITH PREJUDICE.

I.      **BACKGROUND**

A.      **Factual Background**

Ms. Patillo was a letter carrier for the U.S. Postal Service from 1984 until her termination in August 2009. Starting in 1995, Plaintiff engaged in ongoing disputes with her employer, filing sixteen separate EEO Complaints (Dkt. 1-3, Timeline of Complaints at Pg ID 199), and a previous, unsuccessful employment action in this Court. *See Patillo v. Potter, Postmaster Gen'l, United States Postal Serv.,* No. 04-71070, 2006 WL 6669586 (E.D. Mich., Jan. 31, 2006).

The instant Complaint arises out of alleged discriminatory acts that occurred at Plaintiff's workplace during a three month period from May 12 through August 11, 2009. (Compl. 1). More specifically, Plaintiff's removal and this lawsuit concern the proper way to handle "DPS" or "delivery process sequence" mail. DPS mail is a category of mail that is machine sorted before it arrives at the post office. (Def.'s Mot. Summ. J., Ex. 1A, Patillo Dep. 21:10-25). In April 2009, as a way to increase postal service automation, postal service supervisor Paulette Morris informed mail carriers that they were not to take their DPS mail back to their cases or to case DPS mail. (Def.'s Mot. Summ. J., Ex. 1A, Patillo Dep. 43:8-18, 44:16-18; Dkt. 1-7, EEOC Hr'g 410). To "case" means to manually sort mail in order of address. "Case" is also used to refer to a mail carrier's individual desk or counter area. (*Id.* at 15-18.) As such, when mail carriers had both DPS and non-DPS mail, they were directed to carry the two types of mail in separate bundles in their mail trucks. *(Id.* at 23:6-25.)

Pursuant to this April 2009 Postal Service directive, DPS mail was to be handled at the delivery point. (Def.'s Mot. Summ. J., Ex. 2, McDonald Dep. 41:9-21). Plaintiff refused to follow these instructions citing an eye problem. However, on May 8, 2009, when supervisor Morris asked Plaintiff to supply medical documentation, Plaintiff provided a year-old report (dated May 27,

2008), not a current report (dated April 24, 2009) that cleared her of any restrictions.  (Def.'s Mot.

Summ. J., Attach. A,  Def.'s Statement of Facts, No. 13).

      Plaintiff refused to follow additional, direct orders from her direct supervisors Jason

McDonald and Rita Allen to not case DPS mail on the following dates: May 4th, May 6th, May 9th,

and May 11th.  (Def.'s Mot. Summ. J., Ex. 2, McDonald Dep. 5:6-21; Dkt. 1-2, at 116; *see also*

Def.'s Mot. Summ. J., Ex. 6, EEO Investigative Report of 12/1/09, at 8-9). On May 12, 2009,

Plaintiff was issued a Notice of Suspension of 14-Days or Less for Failure to Follow Instructions.

(Dkt. 1-2, at 116-18).  Following the suspension, and despite objections from her supervisor,

Plaintiff started "tubbing out" her DPS mail for three large businesses in the parking lot of the post

office citing safety concerns.  (Def.'s Mot. Summ. J., Ex. 6, EEO Investigative Report of 12/1/09,

at 12).  "Tubbing out" is, like casing, sorting mail by address, but where the volume of mail is high

and must be placed in tubs when it is sorted.  From approximately July 17 until her last day of work

on August 4, 2009, Plaintiff did not follow the directive to tub out the mail near the businesses.

Instead, she sorted or "tubbed out" this mail on field time in the post office parking lot.  (Def.'s Mot.

Summ. J., Ex. 1, Patillo Dep. 76:10-19; Dkt. 1-7, EEOC Hearing Tr. at 375; *see also* Patillo Dep.

at 49:5-16).

      From July 28 until August 3, 2009, Plaintiff refused to handle her DPS mail as directed and

was asked to leave after preparing her truck for her delivery route.  (Def.'s Mot. Summ. J., Ex. 6,

EEO Investigative Report of 12/1/09, at 8-9).  Plaintiff's time during this period was recorded as

Leave Without Pay (LWOP) status, but Plaintiff was later paid for these days because regular

employees are entitled to eight hours pay unless put on emergency leave status.  (*Id.* at 12).

      Plaintiff continued to manually sort DPS mail and on August 4, 2009, Plaintiff's supervisors

McDonald and Allen both told Plaintiff to go home. (Def.'s Mot. Summ. J., Ex. 1, Patillo Dep.; Dkt. 1-8, at 397).  Plaintiff refused and instead got into her delivery truck and delivered her route.  (*Id.*) The Labor Relations Board advised Defendant to put Plaintiff on emergency placement.  They did so, and that decision was later upheld by the Dispute Resolution Team as being issued with "just cause."  (Def.'s Mot. Summ. J., Dkt. 1-8, at 198).

On August 11, 2009, Plaintiff was issued a Notice of Removal for Failure to Follow Instructions and Insubordination.  (Def.'s Mot. Summ. J., Dkt. 1-2, at 141-46; Dkt. 1-8, at 419).  The Dispute Resolution Team later came to a resolution that would allow Plaintiff to return to work if she would agree to sign a Last Chance Agreement.  (Def.'s Mot. Summ. J., Dkt. 1-3, at 152). Plaintiff refused to sign the Agreement.

### B.    Procedural History

Plaintiff filed a formal complaint with the EEO on August 6, 2009.  (Def.'s Mot. Summ. J., Ex. 5, Formal Complaint dated 8/6/09).  On December 29, 2009, Plaintiff sought a hearing by an Equal Employment Opportunity Commission ("EEOC") Administrative Law Judge.  As part of this process, discovery was conducted, including the depositions of Plaintiff, Allen and McDonald.  (*See, e.g.,* Dkt. 1-6, Allen EEOC Dep 316-59; Dkt. 1-5, McDonald EEOC Dep 283-315).  On November 1-2, 2010, EEOC Administrative Law Judge Mimi Gendreau held a hearing in Plaintiff's case.  (Dkt. 1-10, Transcript of EEOC Hearing (Vols I and II) 360-514).  On May 25, 2011, ALJ Gendreau issued a 44-page opinion rejecting Plaintiff's discrimination claims in their entirety.  (Dkt. 1-1, at 23-67).  On June 2, 2011, a Notice of Final Action was issued by EEO Services in the Postal Service informing Plaintiff that the ALJ opinion had been adopted by the Postal Service and that Plaintiff had the right to appeal to the office of Federal Operations of the EEOC, or to file a civil action in

this Court.  (Dkt. 1-1, at 21-22).  On August 5, 2011, Plaintiff filed her Complaint in this Court.

(Dkt. 1-1, at 1-2).

## II.    ANALYSIS

### A.    Standard of Review

A motion for summary judgment is appropriate if the record shows that there is no genuine

issue as to any material fact and a party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).  In analyzing the motion, this

court draws all reasonable inferences in favor of the non-moving party and construes all evidence

in a light most favorable to the non-movant.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 587 (1986).  In opposing the motion, however, "the mere existence of a scintilla of

evidence in support of Plaintiff's position will be insufficient; there must be evidence on which the

jury could reasonably find for the plaintiff." *See Anderson*, 477 U.S. at 252.

### B.    Plaintiff's Title VII Claims

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, makes it "an unlawful

employment practice for an employer  .  .  .  to discriminate against any individual with respect to

his compensation, terms, conditions, or p rivileges of employment, because of such individual's

race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *Harris v. Forklift Sys., Inc.,*

510 U.S. 17, 21(1993).

A plaintiff may establish a *prima facie* case of discrimination either by presenting direct

evidence of intentional discrimination by the defendant, or by providing circumstantial evidence

which creates an inference of discrimination.  *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004).

Importantly, "mere personal belief, conjecture and speculation are insufficient to support an

inference of ... discrimination." *Grizzell v. City of Columbus*, 461 F.3d 711, 724 (6th Cir. 2006) (*quoting Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 247 (6th Cir. 2997)).  Where there is no direct evidence of discrimination, the court applies the well-established burden-shifting analysis.  The plaintiff must first establish a prima facie case of discrimination.  Next, the burden of production shifts to the defendant employer to articulate a legitimate non-discriminatory reason for its actions. Finally, if the employer is able to carry its burden, the plaintiff must prove by a preponderance of the evidence that the reasons offered were a pretext for discrimination.  *See DiCarlo*, 358 F.3d at 414-15; *see also Tingle v. Arbors at Hilliard*, No. 11-3494 2012 U.S. App. LEXIS 18315 (6th Cir. Aug. 29, 2012) (requiring the plaintiff to utilize the 3-part *McDonald-Douglas* protocol after failing to provide any direct evidence of retaliation).

Plaintiff alleges that Defendant unlawfully discriminated against her because of her race and that Defendant retaliated against her for previous EEO activity, both in violation of Title VII.

### 1.      Race Discrimination

A prima facie case of race discrimination under Title VII is established when a plaintiff is able to show: 1) she is a member of a protected class; 2) she was subjected to an adverse employment action; 3) she was qualified for the position; and 4) she was replaced by someone outside the protected group, or was treated differently than a similarly-situated non-protected employee.  *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 461 (6th Cir. 2001); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582-83 (6th Cir. 1992).

This Court believes that Plaintiff has demonstrated the first three elements by producing evidence that: 1) she is a black woman; 2) Defendant terminated her from her job as a mail carrier; and 3) she worked for 35 years as a mail carrier and there is no evidence to suggest, nor did

Defendant argue, that Plaintiff was not qualified for the position.

The Court further finds, however, that Plaintiff has failed to establish sufficient evidence with respect to element number four of her *prima facie* case, namely, whether she was replaced or treated differently than a similarly-situated, non-protected individual.  Plaintiff alleges that she saw several caucasian mail carriers case their DPS mail and Defendant did not discipline or reprimand them.  However, Plaintiff did not present any evidence that these carriers did what she did – i.e., case their mail in the post office or in the post office parking lot after repeated direct orders to stop.  Jason McDonald testified before the EEOC that he was not aware of any of the employees that Plaintiff had named taking DPS mail back to their cases.  (MSJ, Ex. 6, EEO Investigative Report dated 12/1/09, at 23).  Allen testified that, on one occasion, she saw DPS mail at the case of employee Michael Kijewski, but that after speaking to him, it never happened again.  (*Id.* at 24).  Similarly, Allen testified that when Plaintiff accused employee, Dawn Miller, of casing her mail, Allen instructed Miller to cease casing and no further action was necessary.  (*Id.* at 23-24).  Of the other employees named by Plaintiff, four (Daniels, Debellis, Johns and Trumbo) testified before the EEOC that they did not bring DPS mail back to their case or manually case their DPS mail after the post office forbade it.  (*Id.* at 36-39).  And with respect to the other four employees, (Dubois, Koening, Johns, Hoffman) Plaintiff has not presented any evidence that would render them similarly-situated.

To support her claim, Plaintiff has also introduced a petition signed by co-workers indicating that they have handled their DPS mail in the post office and in the parking lot for years.  (Dkt. 1-7, EEOC Hr'g 381).  The petition, however, without more, does not identify anyone who is similarly-situated to Plaintiff.  Indeed, to make out the fourth element of her *prima facie* case, Plaintiff would

need to bring forward evidence of a co-worker who behaved in a similar manner, namely, refusing to follow direct orders from her supervisors, and who thereafter was not removed from his or her job.  Plaintiff has not done so here.

Plaintiff also alleges that the West Bloomfield police were called to the post office in response to incidents involving the following employees:  Tyrone Sparks (black male); Ann Sparks (white female); William Cole (white male); Ronald Jones (black male); Lynn Jones (white male). Plaintiff argues that these incidents did not lead to dismissal, and, thus demonstrate Defendant's race-based discrimination against her.  However, Tyrone Sparks and Ronald Jones are black and are, therefore, protected individuals for Title VII purposes.  Furthermore, the fact that the police were dispatched on one occasion for each of the remaining individuals does not render them similarly-situated under Title VII.  This case is about repeated incidents of insubordination – not about being terminated following a single incident of violence in the workplace.  This Court fails to see how Plaintiff's evidence in this regard creates a genuine issue for trial.

Moreover, even if Defendant had to articulate a legitimate non-discriminatory reason for its actions, Defendant has come forward with overwhelming evidence to show that Plaintiff was terminated for her repeated incidents of insubordination, and not for any race-based discriminatory reason.  The Court further finds that Plaintiff has failed to state by a preponderance of the evidence that Plaintiff's offered reasons were a pretext for discrimination.  As such, the Court concludes that Plaintiff's Title VII race discrimination claim fails.

### 2.      Retaliation

Plaintiff also failed to provide any direct evidence of retaliation, therefore, to succeed on her claim, she must prove a circumstantial case under the *McDonald-Douglas* burden-shifting

8

framework. *Tingle*, 2012 U.S. App. Lexis at \*7. Title VII protects employees from retaliation by employers for engaging in protected conduct where the employee is able to show: 1) he or she engaged in an activity protected by Title VII; 2) the activity was known to the defendant; 3) he or she was subjected to an adverse employment action; and 4) the adverse action occurred because of the protected activity. *McClain v. NorthWest Cmty. Corr. Ctr.*, 440 F.3d 320, 335 (6th Cir. 2006).

Here, filing an EEO complaint is unequivocally a protected activity under Title VII. *See Mulhall v. Ashcroft*, 287 F.3d 543, 551 (6th Cir. 2002) (recognizing EEO complaint as a protected activity under Title VII). Further, Plaintiff was subjected to an adverse employment action when Defendant terminated her. Plaintiff, however, has not produced any evidence that Defendant knew of the protected activity, or that her termination occurred because of this activity. To the contrary, Plaintiff's supervisors McDonald and Allen maintain that they had no knowledge whatsoever regarding Plaintiff's previous EEO filings when they imposed the discipline that ultimately led to Plaintiff's termination. (Def.'s Mot. Summ. J., EEO Investigative Report dated 12/1/09, at 7-8). Moreover, Plaintiff offers no additional connection between her previous EEO complaints and her termination.

The Sixth Circuit has made clear that where "all the critical facts show that the Defendant[] had valid, non-retaliatory justifications for the discipline they imposed on [the plaintiff], a finding of retaliation is not appropriate." *See Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 403 (6th Cir. 2010). As discussed above, this Court has determined that Defendant had valid non-retaliatory justifications when it terminated Plaintiff. As such, Plaintiff's retaliation claim should be dismissed as a matter of law.

### C.     ADEA – Age Discrimination

To establish age discrimination under the Age Discrimination in Employment Act (ADEA), a plaintiff must show that: 1) she was 40 years old or older; 2) she was qualified for a particular position; 3) she was subjected to an adverse employment action; and 4) she was replaced by a younger individual. 29 U.S.C. § 621 *et seq.*; *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 317 (6th Cir. 2007). The fourth element can alternatively be established by providing evidence that a similarly-situated younger employee was treated more favorably than the plaintiff. *Tuttle*, 474, F.3d at 318-19.

Here, at the time of her removal, Plaintiff was 57 years old. (Def.'s Statement of Facts, No. 1.) With respect to the second element, Defendant has not suggested that Plaintiff is not qualified for her position as a city carrier; indeed, at the time of her removal, Plaintiff had been employed by the post office for 35 years. (Def.'s Statement of Facts, No. 1.) Regarding the adverse employment action element, Defendant terminated Plaintiff's employment on August 10, 2009. (*Id.*) As such, the Court believes that Plaintiff has established the first three elements of her age discrimination claim under ADEA.

With respect to the fourth element, however, Plaintiff has not brought forth any evidence that she was replaced by a younger individual or that a younger individual was treated more favorably. Indeed, the only evidence that Plaintiff has presented with respect to her age discrimination claim includes: 1) that she was given a 14-day suspension on her 25-year anniversary; and 2) that, on the days at the end of July 2009 and beginning of August 2009, she was "repeatedly sent home [sic] after casing, when [another carrier] that was a lot younger than [her] carried [Plaintiff's] route." Pl.'s Resp. To Def.'s First Set of Interrog., No. 4.)

As an initial matter, there is no evidence that this employee "replaced" Plaintiff. He simply

10

filled in while she was unavailable.  Additionally, post office customers rely on the expeditious

delivery of their mail service.  Defendant cannot be found liable under ADEA for temporarily

locating another employee who happened to be younger than Plaintiff to carry Plaintiff's route after

Plaintiff repeatedly refused to comply with her supervisor's direct orders.  And no evidence has been

presented that this younger substitute cased any DPS mail.  Thus, after considering the entire record,

the Court fails to see how Plaintiff's evidence supports her theory that Defendant treated even one

similarly-situated younger employee more favorably.  For this reason, the Court concludes that

Plaintiffs' ADEA claim fails.

### III.    CONCLUSION & RECOMMENDATION

For the foregoing reasons, the Court RECOMMENDS that Defendant's Motion for Summary

Judgment be GRANTED in its entirety and that Plaintiff's Complaint be dismissed WITH

PREJUDICE.

### IV.    FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation

within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*,

474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States

v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections,

but failing to raise others, will not preserve all the objections a party may have to this Report and

Recommendation.  *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal

quotation marks omitted); *Frontier*, 454 F.3d at 596-97.  Objections are to be filed through the Case

Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies,

11

through the Clerk's Office.  *See* E.D. Mich. LR 5.1.  A copy of any objections is to be served upon

this magistrate judge but this does not constitute filing.  *See* E.D. Mich. LR 72.1(d)(2).  Once an

objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be

filed within seven (7) days of service of the response.  E.D. Mich. LR 72.1(d)(3), (4).


Date:   September 14, 2012                              s/Laurie J. Michelson
                                                       Laurie J. Michelson
                                                       United States Magistrate Judge



## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys
and/or parties of record by electronic means or U.S. Mail on September 14, 2012.


                                       s/Jane Johnson
                                       Deputy Clerk